**IN THE UNITED STATES DISTRICTCOURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 20-cv-01396-RM-NYW

MARQUISE D. HARRIS and
DEDRICK D. HARRIS,

      Plaintiffs,

v.

MARK ROMERO,
JESSY AVENDANO,
SERGEANT MARTINEZ,
ROBERT J. FOSTER,
EMILY CAPSER,
OFFICER NOVOTNY,
CHIEF PAZEN,
DIK KUSHDILLIAN,
BETH MCCANN,
JOHN DAVIDSON,
GINEN HATTER-PEREZ,
JAMES DIXION,
OFFICER REINER,
OFFICER JENKINS,
CITY AND COUNTY OF DENVER, and
JOHN DOE,

      Defendants.

---

## ORDER

---

This matter is before the court on two motions:

(1)    Denver Defendants' Motion to Dismiss, In Part, Plaintiffs' Complaint Pursuant To

Fed.R.Civ.P. 12(B)(6) [Doc. #1] ("Motion for Partial Dismissal") [#31], filed

August 17, 2020]; and

(2)    Plaintiffs' Joint Motion to Amend Complaint ("Motion to Amend") [#49], filed

November 2, 2020].

Having reviewed the Motions and the associated briefing and the entire docket, this Court finds

that oral argument will not materially assist in their resolution.  Upon review, the Joint Motion to

Amend is **GRANTED** and Defendants' Motion for Partial Dismissal is **GRANTED IN PART**

**and DENIED IN PART**.

## FACTUAL BACKGROUND

The following facts are drawn from the Complaint and are taken as true for the purposes

of this Memorandum Opinion and Order.  Marquise D. Harris ("Mr. M. Harris") and his co-

plaintiff, Dedrick D. Harris ("Mr. D. Harris" and collectively with Mr. M. Harris, "Plaintiffs"),

initiated this action on May 15, 2020, by filing a *pro se* Complaint against several named

defendants and one unknown Doe defendant.[1]  *See generally* [#1].[2]  According to Mr. M. Harris,

he was playing basketball on November 6, 2018 when, unbeknownst to him, the Denver Police

Narcotics Unit were conducting surveillance in the area of East Colfax Avenue and North Xanthia

Way in Denver, Colorado.  [*Id.* at ¶ 12].  Defendant Mark Romero ("Defendant Romero" or

"Detective Romero") radioed other Denver Narcotics officers, falsely claiming that he had

---

[1] Because Plaintiffs proceed pro se, this court affords their papers and filings a liberal construction.
*Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  Consistent with this principle, at times, the court
will quote from Plaintiffs' filings without the use of [sic] or the correction of spelling or syntax.
But the court cannot and does not act as Plaintiffs' advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110
(10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiffs as to a
represented party, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008);
*Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

[2] Although the Court refers to the original Complaint [#1], the factual allegations in the Amended
Complaint remain largely the same.  [#56].  For the purposes of this Background section, the Court
finds there are no material changes in the relevant factual allegations between the original
Complaint and the proposed Amended Complaint.

witnessed Mr. M. Harris and another Black man engage in two drug transactions and Mr. M. Harris counting a large amount of cash. [*Id.* at ¶¶ 15-17]. Though Defendants Jesse Avendano ("Defendant Avendano" or "Detective Avendano"), Defendant Johny Martinez ("Defendant Martinez" or "Sergeant Martinez"); Officer Robert J. Foster ("Defendant Foster" or "Officer Foster"), Defendant Emily Capser ("Defendant Capser" or "Officer Capser"); and Officer John Doe were all in the area, none witnessed these purported drug transactions. [*Id.* at ¶ 20]. Nevertheless, Detective Romero yelled "He's got a gun," which resulted in Defendants Romero, Avendano, Martinez, Foster, Capser, and Doe pursuing him on foot. [*Id.* at ¶ 27]. While in pursuit, Defendant Foster perpetuated this falsehood by also yelling "he has a gun," [*id.* at ¶ 28], and though Mr. M. Harris responded that he was not armed, Defendants Romero, Avendano, Martinez, Foster, Capser, and Doe all ignored him. [*Id.* at ¶ 30].

The Denver Police officers caught Mr. M. Harris, and during his apprehension, Defendant Foster, Romero, Capser, Martinez, Avendano, and Doe struck him in the face and head with their "fists, kicks, knees, a radio and flash light." [*Id.* at ¶ 32]. Defendants Foster and Romero also rammed Mr. M. Harris's face, head, and upper torso into a nearby parked vehicle. [*Id.* at ¶ 34]. Defendant Capser grabbed Mr. M. Harris's right arm and hand and twisted it until it dislocated, and landed a hard knee thrust to his rib cage area, causing breakage and several abrasions. [*Id.* at ¶ 35]. Defendant Foster applied a chokehold to Mr. M. Harris and Defendant Romero slammed him face first onto the pavement, knocking him unconscious. [*Id.* at ¶ 36]. None of the Denver Police officers present intervened to protect Mr. M. Harris from Defendant Foster, Romero, and Capser's use of excessive force. [*Id.* at ¶ 40]. Defendants Romero, Foster, Avendano, Capser, Martinez, and Doe then all conducted warrantless searches of Mr. M. Harris, including of his anus,

3

Case 1:20-cv-01396-RM-NYW   Document 70   Filed 03/29/21   USDC Colorado   Page 4 of 32

anal cavity, gluteus maximus, and underwear, as well as his pants and jacket pockets, during his stop and arrest. [*Id.* at ¶¶ 56, 59]. No drugs were ever found on Mr. M. Harris. [*Id.* at ¶ 75].

Mr. M. Harris further alleges that the individually-sued Defendant Officers falsified statements in their police reports about the incidents and Mr. M. Harris's injuries. [*Id.* at ¶ 44]. He also contends that Defendants Romero, Foster, Capser, Doe, Martinez and Avendano confiscated cell phones and cameras that lay witnesses were using to record the incident, and Defendant Foster forcibly removed a witness's cell phone and threatened her with jail time for interference with police. [*Id.* at ¶ 47]. Mr. M. Harris alleges that Defendants Avendano, Capser, Doe, Foster, Martinez, and Romero each subsequently conducted warrantless searches of his cell phones, including obtaining and searching transactional records of each of Mr. M. Harris's two cell phones. In support of his allegations, Mr. M. Harris includes photographs that appear to be derived from body worn camera footage and refers to that footage, along with photographs taken by a security application on his cell phone, in the Complaint. *See e.g.* [*Id.* at ¶¶ 43, 47, 78-79]. Finally, Mr. M. Harris avers that the individually-sued Officers falsely alleged that he used the alias name "Dedrick Harris" while under custodial interrogation. [*Id.* at ¶ 139].

This illegal conduct culminated in Mr. M. Harris's arrest for criminal charges of "Offense # 12899-0 Police Interference and Offense # 24803-0 False Information." [*Id.* at ¶ 86]. Mr. M. Harris contends that on the way to the police station, Defendants Foster and Capser became irate when he refused to provide them with the password to his cell phones, and Mr. M. Harris asked whether they had authority for such search. [*Id.* at ¶¶ 88-91]. Defendants Foster and Capser then beat Mr. M. Harris with their fists, baton and a radio; forcibly removed him from the back seat of their squad car; and fashioned a makeshift noose and placed it around his neck and tightened and/or

yanked on it.  [*Id.* at ¶ 91].  Mr. M. Harris subsequently filed a complaint with the Internal Affairs Bureau immediately after his release from the Denver Detention Center.  [*Id.* at ¶ 107].

Mr. M. Harris alleges that Defendants Romero, Foster, Capser, and Martinez each falsified information during the investigation into their conduct.  [*Id.* at 111-114].  He further contends that "Individual Defendants and other officers, including Internal Affairs Sgt. James Dixon ("Defendant Dixon" or "Sergeant Dixon") colluded with each other in preparing their series of cover up reports."  [*Id.* at ¶ 119].  Mr. M. Harris further alleges that Defendant Foster then conspired with Defendants Kenneth Reiner ("Defendant Reiner" or "Officer Reiner"), Capser, Defendant Jeremy Jenkins ("Defendant Jenkins" or "Officer Jenkins"), and Chelsea Novotny ("Defendant Novotny" or "Officer Novotny") to retaliate against him.  Specifically, Plaintiffs allege that on March 1, 2019, when Mr. D. Harris was parked at Joes Auto/A1 Car Rental where Mr. M. Harris worked, police pulled behind him and charged his vehicle, believing he was Mr. M. Harris.  [*Id.* at ¶¶ 143, 145].  Defendant Foster then violently removed Mr. D. Harris from the vehicle, and Defendants Reiner and Foster beat Mr. D. Harris with their fists and used painful pressure point techniques on him.  [*Id.* at ¶¶ 146-47].  Defendants Capser and Novotny then arrived at the scene, exited their squad cars, and joined in the beating with their fists and kicks before falsely arresting him.  [*Id.* at ¶ 150].  Defendants Foster, Reiner, and Capser also conducted warrantless searches on Mr. D. Harris's cell phone and had his vehicle towed to the police impound lot.  [*Id.* at ¶¶ 165-66].

After learning that they had mistaken Mr. D. Harris for Mr. M. Harris, Defendants Foster, Reiner, Capser, and Jenkins each wrote false statements alleging that Mr. D. Harris ignored commands to stay inside his vehicle and that Mr. D. Harris resisted officers.  [*Id.* at ¶¶ 158-59].  Based on these false allegations, the Denver District Attorney charged Mr. D. Harris with

Obstruction of a Peace Officer. [*Id.* at ¶ 162]. Plaintiffs allege that City Attorney Ginene Hatter-Perez ("Defendant Hatter-Perez"), along with the Denver Police officers, the City, and Dikran Kushdilian ("Defendant Kushdilian") conspired to destroy video surveillance records from Halo Street cameras in the area of North Xanthia street in order to cover-up the baseless stop and use of force against Mr. M. Harris. [*Id.* at ¶ 184]. During the pendency of the respective criminal actions, Mr. M. Harris contacted Defendant Beth McCann ("Defendant McCann") to complain that the Defendant Officers conspired to convict him using perjured evidence and that the stops were racially motivated and the stop of Mr. D. Harris was in retaliation for Mr. M. Harris's internal affairs complaints. [*Id.* at ¶ 189].

Ultimately, the charges against Mr. M. Harris were dismissed by the Honorable Gary Jackson [*id.* at ¶ 185] and the charges against Mr. D. Harris were dismissed by the Denver District Attorney [*id.* at ¶ 186]. Criminal Investigator James Davidson ("Defendant Davidson") and Defendant McCann then conspired to vindicate the Defendant Officers by swiftly closing the investigation without charging any officers and falsely stating that the surveillance video from the East Colfax Convenience Store lacked a time and date stamp. [*Id.* at ¶ 193].

## PROCEDURAL BACKGROUND

Plaintiffs initiated this action on May 15, 2020. [#1]. Plaintiffs allege that Defendants violated their First, Fourth, and Fourteenth Amendment rights when officers allegedly conducted a warrantless search of, assaulted, and arrested Mr. M. Harris after fabricating evidence during "heavy narcotics surveillance" of the general area in which Mr. M. Harris was playing basketball, and Mr. D. Harris in retaliation of Mr. M. Harris's internal affairs complaints, after mistaking him for Mr. M. Harris. *See generally* [#1]. They invoked the jurisdiction of the Court pursuant to "the Constitution and laws of the United States, including Article III, Section 1 of the United States

Constitution and is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 42 U.S.C. § 1988.  The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201."  [*Id.* at 6]. Plaintiffs bring five causes of action.  Read liberally, Plaintiffs assert different theories of constitutional violations, i.e., "excessive force, sexual assault, and illegal search & seizure," in violation of the Fourth and Fourteenth Amendments against Defendants Romero, Foster, Capser, Avendano, Martinez, Doe, Reiner, Jenkins, Novotny, and the City pursuant to 42 U.S.C. § 1983 in Claim I.  [*Id.* at 7-11].  In addition, in Claim II, Plaintiffs assert race discrimination in violation of the Fourteenth Amendment and 42 U.S.C. § 1981 against Defendants the City and County of Denver ("the City"); McCann, Perez, Kushdilian, Dixon, Davidson, Foster, Capser, Romero, Martinez, Reiner, Novotny, Avendano, Jenkins, and Doe.  [*Id.* at 60-63].  In Claim III, Plaintiffs assert a claim for Retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 against Defendants Foster, Reiner, Capser, Novotny, Jenkins, and Doe.  [*Id.* at 63-66].  In Claim IV, Plaintiffs assert a claim for Malicious Prosecution pursuant to 42 U.S.C. § 1983 against Defendants the City, McCann, Perez, Kushdilian, Pazen, Dixon, Romero, Foster, Capser, Martinez, Avendano, Doe, Jenkins, Reiner, Novotny, and Davidson. [*Id.* at 67-70].  In Claim V, Plaintiffs assert a violation of 42 U.S.C. § 1983 for "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth, Fourteenth, and First Amendments and in violation of 42 U.S.C. § 1981" against Defendants the City, Pazen, Perez, McCann, Kushdilian, Dixon, and Davidson.  [*Id.* at 70-75].  As relief, Plaintiffs seeks economic and non-economic damages, special damages, punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre- and post-judgment interest, and any further relief that the Court deems proper. [*Id.* at 74].

Defendants Romero, Avendano, Foster, Capser, Novotny, Pazen, Kushdilian, Dixon, Reiner, Jenkins, Hatter-Perez, and the City (collectively, "Denver Defendants") filed a Partial Motion to Dismiss for Failure to State a Claim ("Motion for Partial Dismissal") on August 17, 2020. [#31]. The Denver Defendants also filed a Partial Answer.[3] [#32]. Because Plaintiffs did not file a Response to the Motion for Partial Dismissal by the deadline of September 9, 2020, *see* D.C.COLO.LCivR 7.1(d) ("The responding party shall have 21 days after the date of service of a motion, or such lesser or greater time as the court may allow, in which to file a response."), and because Mr. M. Harris did not appear for a September 10, 2020 Telephonic Status Conference [#36], Magistrate Judge Nina Y. Wang issued an Order to Show Cause as to why Mr. M. Harris's claims should not be dismissed for lack of prosecution and failure to comply with this court's order, with a return date of September 24, 2020. [#38]. The Magistrate Judge also set a further Status Conference for November 12, 2020. [#36].

Mr. M. Harris did not respond by September 24, 2020. Accordingly, on September 28, 2020, Magistrate Judge Wang recommended that the claims by Mr. M. Harris be dismissed without prejudice. [#40]. That same day, Mr. M. Harris responded to the Order to Show Cause, indicating that he could not participate due to his minor child's exposure to the novel coronavirus. [#41]. Magistrate Judge Wang then *sua sponte* withdrew her Recommendation, and discharged the Order

---

[3] At the time of the filing, the United States Marshals had not yet served Defendants Martinez, McCann, and Davidson. Since that time, Defendant Johnny Martinez was served [#62], and joined the Motion for Partial Dismissal and Partial Answer [#62, #67], and thus is included as one of the "Denver Defendants." The Court's docket does not reflect any service for Defendant McCann or Defendant Davidson, nor has counsel entered an appearance on either individual's behalf. It appears that the Clerk of the Court rejected Plaintiffs' request for summons for Defendants McCann and Davidson, because the captions were incomplete and directed Plaintiffs to refile such request. [#34, #35]. There is no indication that Plaintiffs have re-filed such requests for summons.

to Show Cause.  [#42].  She also subsequently extended the deadline for Mr. D. Harris to respond to the pending Motion for Partial Dismissal up to and including November 2, 2020.  [#47].

On November 2, 2020, Plaintiffs jointly filed "Plaintiff's Joint Motion to Amend Complaint" ("Motion to Amend") [#49, filed November 2, 2020].  In their Motion to Amend, Plaintiffs seek leave of court to amend their initial Complaint to assert "Statutory claims for freedom of speech, conspiracy, deliberate indifference, due process, excessive force, illegal search and seizure, deliberate indifference, retaliation, and a common law claim of false arrest, false imprisonment, kidnapping and malicious prosecution."  [#49 at 2].  Plaintiffs also argue that Defendants failed to submit a complete answer to the Complaint, and thereby defaulted on the "first, fourth, fifth, eight and fourteenth amendment claims and that as a matter of law this court should enter judgment against the Defendants in favor of the Plaintiff's on all claims unanswered." [*Id.*].  Plaintiffs further contend that in light of Defendants' arguments and evidence submitted in support of the Motion for Partial Dismissal, they should be allowed to amend their Complaint to "clarify and support [their] claims for conspiracy, excessive force, illegal Search and seizure, due process, deliberate indifference and assault and battery, false arrest, abuse of process and malicious prosecution."  [*Id.*].  Plaintiffs, however, did not attach a proposed Amended Complaint as contemplated by Local Rule 15.1(a).  D.C.COLO.LCivR 15.1.

During the November 12, 2020 Status Conference, Magistrate Judge Wang directed the Defendants to provide a proposed Amended Complaint on or before November 23, 2020.  [#51 at 2].  In addition, she set a deadline for Defendants to respond to the Motion to Amend no later than December 11, 2020.  [*Id.*].  On November 24, 2020, Plaintiffs filed their proposed Amended Complaint.  [#56].  The Denver Defendants oppose the Motion to Amend, arguing that (1) it fails to comply with Local Rule 15.1(a); (2) it is untimely and the Denver Defendants will be unfairly

prejudiced if amendment is permitted; and (3) the proposed Amended Complaint is futile.  [#60].

Plaintiffs have not filed a Reply, and the time to do so has long passed.

## LEGAL STANDARDS

### I.      Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6),

the court must "accept as true all well-pleaded factual allegations . . . and view these allegations

in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir.

2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a

plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of

a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *See also*

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even *pro se* litigants cannot

rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion).  Rather, "a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  *See also Robbins v. Oklahoma*, 519

F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations

in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across

the line from conceivable to plausible").

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges

facts supporting all the elements necessary to establish an entitlement to relief under the legal

theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).  Should

the court receive and consider materials outside the complaint, the court may convert a Rule

12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status

and the nonmovant responded by supplying its own extrinsic evidence. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). However, a district court may consider legal arguments contained in a brief in opposition to dismissal or documents referred to in the complaint that are central to a plaintiff's claim, without converting the Rule 12(b)(6) motion into a summary judgment motion, if the Parties' do not dispute their authenticity. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). In addition, the court may consider documents subject to judicial notice, including court documents and matters of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

## II.     Rule 15(a) and Local Rule 15.1(b)

A Scheduling Order specifying a deadline by which to amend pleadings has not yet been entered, and thus, the Court examines the Motion to Amend within the confines of Federal Rule of Civil Procedure 15(a) only. *Baldwin v. Pelican Reef Mgmt., LLC*, No. 18-cv-00586-PAB-NYW, 2018 WL 4372941, at *1 (D. Colo. May 10, 2018), *report and recommendation adopted*, 2018 WL 4368679 (D. Colo. May 29, 2018); *see also Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000) (applying only Rule 15 when the deadline set for amendment in the Scheduling Order has not yet passed). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and whether to allow amendment is within the trial court's discretion. *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

The United States District Court for the District of Colorado has adopted its own Local Rule of Civil Practice 15.1(b) as a supplement to Rule 15 of the Federal Rules of Civil Procedure. Local Rule 15.1(b) provides:

> (b) **Amendment or Supplementation by Motion.** A party who files an opposed motion for leave to amend or supplement a pleading shall attach as an exhibit a copy of the proposed amended or supplemental pleading which strikes through (e.g. ~~strikes through~~) the text to be deleted and underlines (e.g. <u>underlines</u>) the text to be added. Unless otherwise ordered, the proposed amended or supplemental pleading shall not incorporate by reference any part of the preceding pleading, including exhibits. Unless otherwise ordered, if a motion for leave to amend or supplement a pleading is granted, the moving party shall file and serve the amended or supplemental pleading on all parties under Fed. R. Civ. P. 5 no later than 14 days after the filing of the order granting leave to amend or supplement.

D.C.COLO.LCivR 15.1(b).

In applying these standards, the court should reasonably read the pro se litigant's pleadings to state "a valid claim on which the plaintiff could prevail . . . despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

## ANALYSIS

### I.     Motion to Amend

"It is well-established that an amended complaint supersedes the original complaint and renders the original complaint of no legal effect." *See Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1323–24 (D. Colo. 2019) (internal quotations omitted); *Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006). Thus, the Court first turns to the Motion to Amend, considering each of the Denver Defendants' arguments.

12

### A.   Violation of Local Rule 15.1(b)

The Denver Defendants first argue that the Court should deny Plaintiffs' Motion to Amend because they have failed to comply with Local Rule 15.1(b) that requires the party seeking amendment to provide a redlined copy in which the text to be deleted and the text to be added is specifically identified. [#60 at 5-6]. Although the Denver Defendants are correct that a violation of the Local Rules of Civil Practice can lead to the denial of relief sought by a motion, *see e.g.*, *Mercer-Smith v. New Mexico Child., Youth & Families Dep't*, 416 F. App'x 704, 713 (10th Cir. 2011), this Court notes that there is a strong preference to decide issues on the merits, rather than on procedural grounds. *See Gale v. City & Cty. of Denver*, No. 16-CV-02436-MSK-KMT, 2018 WL 2463242, at *3 (D. Colo. June 1, 2018), *aff'd*, 962 F.3d 1189 (10th Cir. 2020). In addition, Plaintiffs proceed *pro se*, and although they have been previously warned that they are required to follow the same substantive law and procedural rules as represented parties [#38 at 4] and were specifically told to provide a redlined copy [#51], Plaintiffs were not warned that failure to provide a redlined copy of the proposed Amended Complaint might lead to the denial of their Motion to Amend. [*Id.*]. Accordingly, the Court declines to deny the Motion to Amend on the grounds that Plaintiffs failed to comply with Local Rule 15.1(b). **<u>However, Plaintiffs are now specifically advised that in the future, they must consult and comply with the District's Local Rules of Civil Practice as well as the Federal Rules of Civil Procedure, and failure to comply with such Rules may lead to a denial of their motions and/or requests without substantive consideration of the merits</u>**.

### B.   Timeliness and Prejudice

The Court next turns to the Denver Defendants' arguments regarding the lack of timeliness and prejudice. In particular, the Denver Defendants contend that Plaintiffs' proposed Amended

Complaint is untimely because the new facts alleged were known to Plaintiffs prior to the filing of the original Complaint, and Plaintiffs have failed to provide an explanation for such delay.  [#60 at 6-8].

While undue delay is a valid basis for denying a motion to amend, the emphasis is on the adjective.  *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1205 (10th Cir. 2006) (*citing R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)).  Lateness alone does not justify the denial of amendment.  *Id.*  It is true that facts regarding the incidents that occurred in 2018 and 2019 were likely known to Plaintiffs prior to their filing of this action on May 15, 2020; indeed, Plaintiffs make no argument that the amendments they propose were due to information newly discovered since the filing of this action.  [#49].  But given the circumstances of this action, it is difficult to conclude that any delay arising from amendment is undue or prejudicial.

The City had difficulty identifying the proper "Sergeant Martinez" that Defendants intended to sue [#18], despite the allegations that Sergeant Martinez took part in Mr. M. Harris's arrest and was captured by body worn camera video.  [#1 at ¶¶ 31, 43].  Defendant Martinez was not specifically identified until November 12, 2020 [#51 at 2], was not served until December 15, 2020 [#62], and then sought and received an extension to respond through January 26, 2021, when he joined the Motion for Partial Dismissal and Partial Answer  [#64, #66, #67, #68].  Defendants McCann and Davidson remain unserved.  No Scheduling Conference has been set, and discovery has yet to open in this action.  The Motion for Partial Dismissal has not been adjudicated, and this Court agrees with Plaintiffs that this case is in its infancy.

Furthermore, although the Denver Defendants correctly observe that ordinarily, granting an amendment would moot the Motion for Partial Dismissal, *Strich v. United States*, No. 09-cv-01913-REB-KLM, 2010 WL 14826, at *1 (D. Colo. Jan. 11, 2010) ("The filing of an amended

complaint moots a motion to dismiss directed at the complaint that is supplanted and superseded."), Rule 1 of the Federal Rules of Civil Procedure admonishes courts to apply the Federal Rules and adjudicate cases in a manner to secure just, speedy, and inexpensive determination of every action. Fed. R. Civ. P. 1.  The Denver Defendants forward multiple theories of prejudice, but none are persuasive to the Court.  First, the Denver Defendants suspect that Plaintiffs have sought to amend their Complaint to avoid having to respond to the pending Motion for Partial Dismissal.  [#60 at 7].  But nothing in either the Federal Rules of Civil Procedure or the Local Rules of Civil Practice suggests that the mere filing of a motion to amend under Rule 15 suspends a party's deadline to respond to a pending motion.  As noted by the Denver Defendants, Plaintiffs did not file their proposed Amended Complaint as a matter of right, because such an amended pleading must be filed within 21 days after serving the original pleading, or within 21 days after the service of a motion pursuant to Rule 12(b). Accordingly, to the extent that the Denver Defendants are concerned that Plaintiffs can unilaterally restart the clock as to the deadline for filing a Response to the pending Motion for Partial Dismissal, such concern is misplaced.

To that same end, even if the proposed Amended Complaint is permitted, nothing precludes this court from considering the arguments made in the Motion for Partial Dismissal.  *See Koch v. United States*, 822 F. Supp. 1517, 1518 (D. Colo. 1993) (finding that a court may consider a motion to dismiss as being addressed in an amended complaint to the extent defects raised in the motion remain in the new pleading).  In addition, Plaintiffs proceed *in forma pauperis* [#7], and 28 U.S.C. § 1915(e) provides that a court shall dismiss the case at any time if it determines that the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).  Thus, this Court declines to deny the Motion to Amend as unduly delayed or prejudicial to the Denver Defendants.

15

C.      **Futility**

Finally, the Court turns to the Denver Defendants' futility arguments.  The Denver Defendants argue that the amendment is futile, in part because the Plaintiffs have deleted certain sections of their original Complaint.  [#60 at 11].  As an initial matter, despite the language in the Motion to Amend, in comparing the original Complaint with the proposed Amended Complaint, it appears that the language in the original Complaint under "E. Request for Relief" is intentionally omitted.  Compare [#1 at 59] *with* [#56 at 67].  Thus, this Court interprets Plaintiffs' elimination of Claims II-V as a voluntary dismissal of those causes of action, leaving only Claim I [#60 at 11 (citing [#1 at 57-73; #56 at 4])].  In both versions of the Complaint, Claim I asserts a cause of action for violations of the Fourth and Fourteenth Amendments against Defendants Romero, Foster, Capser, Avendano, Martinez, Doe, Reiner, Jenkins, Novotny and the City based on three theories: (1) excessive force, (2) excessive force-failure to intervene, and (3) illegal search and seizure.  *Compare* [#1 at ¶¶ 1-233] with [#56 at ¶¶ 1-233].  Given that the Denver Defendants move to dismiss a portion of Claim I as part of their Motion for Partial Dismissal; contend that the same defects remain in the Amended Complaint [#60 at 11 ("The same arguments made in the first Motion to Dismiss will apply to a future Motion to Dismiss addressing any Amended Complaint [and] the proposed amended facts do not change Plaintiffs' claim for municipal liability, which will be subject to a responsive Motion to Dismiss")]; and develop the arguments regarding individual and municipal liability in a more robust manner in the Motion for Partial Dismissal as compared to the Response to the Motion to Amend, this Court finds that it is appropriate to **GRANT** the Motion to Amend, **ACCEPT** the Amended Complaint for filing; and proceed to the consideration of the Motion for Partial Dismissal, considering where appropriate any additional allegations contained in the Amended Complaint.  *Koch*, 822 F. Supp. at 1518.

II.     **Motion for Partial Dismissal**

In their Motion for Partial Dismissal, the Denver Defendants argue that Defendants Romero, Foster, Capser, Avendano, Martinez, Doe, Reiner, Jenkins, and Novotny are entitled to qualified immunity because Plaintiffs failed to sufficiently plead a cognizable constitutional violation for two theories of excessive force given that—in light of the body worn camera recordings that contradict Plaintiffs' factual allegations with respect to both the November 6, 2018 incident involving Mr. M. Harris and the March 1, 2019 incident involving Mr. D. Harris—the level of force used in each instance was appropriate.[4]  [#31 at 7-11].  With respect to the November 6, 2018 incident, the Denver Defendants argue that the body worn camera video demonstrates that the force used by the arresting officers was proper under the *Graham* standard and that Officers Reiser, Avadano, and Novotny had no personal participation in the use of any force.  In addition, the Denver Defendants contend that Plaintiffs have failed to allege sufficient facts to state a cognizable claim for failure to intervene because the level of force used by the officers was appropriate, and "Plaintiffs' allegations regarding failure to intervene appear to be nothing more than an attempt to assert liability for officers minimally involved in each Plaintiff's arrest."  [*Id.* at 12].  Finally, with respect to Plaintiffs' claims against the City, the Denver Defendants argue that the Plaintiffs identify insufficient facts to establish municipal liability.  [*Id.* at 14-20].

The Court notes that the deadline for Plaintiffs to respond to the Motion for Partial Dismissal has long passed.  Despite the lack of a Response by Plaintiffs, it is appropriate for the

---

[4] The Denver Defendants do not argue the second prong of qualified immunity, i.e., that the law is not clearly established.  *See generally* [#31].  Nor do they make any arguments for dismissal as to Mr. M. Harris's allegations of an improper search of his pockets and personal effects.  [*Id.*].

Court to consider this instant Motion.  D.C.COLO.LCivR 7.1(d).  The Court turns first to what it may consider, and then to each of the arguments in turn.

### A.        Record Before the Court

Ordinarily, a court is confined to the four corners of a pleading in determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, taking well-pleaded facts as true.  *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  Here, however, Plaintiffs have incorporated photographs drawn from body worn camera video footage taken by Defendants Foster and Capser.[5]  In addition, even after the submission of the body worn camera video footage, Plaintiffs have not disputed their authenticity.  As a result, it is appropriate for the court to consider the videos in their entirety, as they are incorporated into the pleadings by reference, in the context of a motion to dismiss without conversion to one for summary judgment.  *See Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) (citation omitted); *Jackson v. Gatto*, No. 13-CV-02516-CBS, 2014 WL 2743130, at *3 (D. Colo. June 17, 2014).  In so doing, the Court views the video in the light most favorable to Plaintiff, except where the video "blatantly contradicts" Plaintiffs' version of events. *See Est. of Ronquillo by & through Est. of Sanchez v. City & Cty. of Denver*, No. 16-CV-01664-CMA-KMT, 2016 WL 10843787, at *2 (D. Colo. Nov. 17, 2016), *aff'd*, 720 F. App'x 434 (10th Cir. 2017) (citing *Thomas v. Durastanti*, 607 F.3d 655, 672 (10th Cir. 2010)).

---

[5] This Court confirmed that Exhibits A-D to the Denver Defendants' Motion for Partial Dismissal [#33, Exs. A-D] were all incorporated by reference through still photographs taken from particular body worn camera video footage.  *See, e.g.*, [#56 at 30 (derived from Ex. B, Body 2 X81240864); *id.* at 32 (derived from Ex. A, Body 2 X81238589); *id.* at 33 (derived from Ex. C, Body 2 X81240864); *id.* at 50 (derived from Ex. D, Body 2 X81238589)].

**B.   Excessive Force**

**1.   Applicable Amendment**

As an initial matter, this court considers what constitutional amendment is appropriately applied to the allegations in this case.  The Amended Complaint reflects three different sets of allegations of excessive force.  With regard to Mr. M. Harris, he alleges conduct occurring incident to his stop and arrest, and conduct occurring during his transport to the Denver Detention Center.  *See generally* [#56].  With regard to Mr. D. Harris, his allegations all relate to alleged conduct incident to his arrest.  [*Id.*].

Claims for excessive force that arise in the context of an arrest or investigatory stop of a free citizen are properly brought under the Fourth Amendment to the United States Constitution— not the Fourteenth Amendment, when the force is used against an arrestee or other seized individual. *Graham v. Connor*, 490 U.S. 386, 365 (1989) ("[W]e...hold *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." (emphasis in original)).

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has noted that, in light of *Graham*, excessive force claims regarding the process of a plaintiff's arrest must be analyzed under the Fourth Amendment. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) ("Substantive due process analysis is therefore inappropriate if [Plaintiff's] claim is covered by the Fourth Amendment." (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)); *Williams v. Tulsa Police Dep't*, 66 F.3d 339 (10th Cir. 1995) ("[T]he district court correctly pointed out that a claim a law enforcement officer used excessive force in the course of

an arrest must be analyzed under the Fourth Amendment."). The Fourth Amendment applies to "[a]ny force used leading up to and including an arrest." *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). Asserting an excessive force claim for arrest-related conduct on a basis other than the Fourth Amendment is "untenable." *Davis v. Hill*, 173 F. Supp. 2d 1136, 1141& n.5 (D. Kan. 2001). This is also true for the allegations that pertain to Defendants Foster and Capser's transport of Mr. M. Harris to the Denver Detention Center. Because Mr. M. Harris had only recently been arrested (without a warrant) and was en route to the Denver Detention Center, he had not yet undergone a probable cause determination. [#56 at ¶¶ 91-94]. Accordingly, Mr. M. Harris is properly classified as an arrestee for purposes of analyzing his constitutional rights. *See Gmyr-Maez v. Albuquerque Police Officer Collin Schneid*er, 169 F. Supp. 3d 1172, 1182 (D.N.M. 2016) (citing *Wilson v. Montano*, 715 F.3d 847, 852–53 (10th Cir.2013) (noting that arrestees have "a Fourth Amendment right to a prompt probable cause determination") (citations omitted)).

Thus, the Court applies the Fourth Amendment to Plaintiffs' allegations as they relate to force used during their respective arrests, and any cause of action asserted pursuant to the Fourteenth Amendment (or any other constitutional amendment) is properly **DISMISSED**.

### 2.    Application of *Graham* Factors

*Incident to Arrest*. Whether police have used excessive force in effectuating an arrest requires a factfinder to evaluate the force used during the arrest against the force reasonably necessary to effect a lawful arrest under the circumstances of the case. *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007). The *Graham* Court observed that determining whether force used in a particular circumstance is "reasonable" under the Fourth Amendment requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

20

whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. It must be judged from the perspective of a reasonable officer on the scene, rather than from 20/20 hindsight, and the operative question is whether the officers' action were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397.

The Denver Defendants appear to concede that any offense at issue for either Mr. M. Harris or Mr. D. Harris was a minor offense. [#31 at 8, 10]. Plaintiffs allege that the Denver Defendants lacked probable cause to arrest them, pointing to the subsequent dismissals of the respective actions against Mr. M. Harris, by Judge Jackson of the Denver County Court, and Mr. D. Harris, by the Denver District Attorney, presumably Defendant McCann. [#56 at ¶¶ 185, 186]. This probable cause inquiry is more relevant to their respective allegations of illegal search and seizure arising out of their respective stops, and then the warrantless search of Mr. M. Harris's pockets and personal effects. But even without probable cause for either arrest, this court must assume the arrests were valid for the purposes of reviewing excessive force claims. *See Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012). Here, whether or not ultimately justified, Defendants Foster and Capser were informed that another officer, Defendant Romero, had just witnessed a hand-to-hand drug transaction. [#32 at ¶ 32]. Thus, this court finds that this factor weighs in favor of the Denver Defendants. *Id.*

With respect to whether Mr. M. Harris or Mr. D. Harris posed, respectively, an immediate threat to the safety of officers or others, Plaintiffs plead that Mr. M. Harris was "jogging away" from the Denver Police Officers. [#56 at 6]. An examination of the body worn camera video confirms that Mr. M. Harris moving away, not toward the officers. [#33 at Exs. A-B]. With respect to the March 1, 2019 incident involving Mr. D. Harris, Plaintiffs plead that Mr. D. Harris

was "still seated inside his vehicle." [#56 at ¶ 141]. Again, an examination of the body worn camera video confirms that Mr. D. Harris was seated inside his vehicle when approached by Defendant Foster and does not show Mr. D. Harris physically moving himself or the vehicle toward the officers. [#33 at Ex. D]. Neither Plaintiff was found with weapons nor did they make overt threats to harm any of the officers. Even the charges that were brought against Plaintiffs – interference with police and false information against Mr. M. Harris and obstruction of justice against Mr. D. Harris – do not suggest an immediate threat to the safety of officers or others. Indeed, the body worn camera video footage does not clearly demonstrate the existence of a firearm or any bystanders, let alone any who were in danger. This factor weighs in favor of Plaintiffs.

Finally, contrary to the Denver Defendants' argument, neither the facts as pleaded nor the body worn camera footage demonstrate that either Mr. M. Harris or Mr. D. Harris objectively presented any threat to the responding police officers or the public. The body worn camera video does not establish that either Mr. M. Harris or Mr. D. Harris physically resisted arrest, despite some salty language. [#33 at Exs. A-D]. This factor also weighs in favor of Plaintiffs.

The law is clear that a small amount of force, like grabbing a suspect and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment. *See Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354–55, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001)). Some of Mr. M. Harris's allegations about the Denver Defendants' conduct in arresting him, such as "ramming his head into a parked vehicle [] many times rendering him unconscious" [#56 at ¶ 5] are blatantly contradicted by the body worn camera video. But the video that does not show, one way or another, whether Defendant Foster or Capser slammed Mr. M. Harris's head against the pavement during the arrest.

22

*Compare* [#56 at ¶ 5] *with* [#33 at Exs. A-B].  Viewing these allegations and the videos in the light most favorable to Plaintiffs, as it must at this juncture, this Court finds that the video does not blatantly contradict Mr. M. Harris's factual averments regarding his allegations that his head was rammed onto the pavement many times.

In contrast, Mr. D. Harris's allegations that he was choked while being removed from his car, beaten with fists, and violently lifted with his arms and hands in an awkward reverse position above his heart are blatantly contradicted by the body worn camera footage.  *See* [#33 at Ex. D].  Thus, these allegations are properly disregarded.  *See Ronquillo,* 2016 WL 10843787, at *2.  Even taking the allegations in the Amended Complaint and viewing the video in the light most favorable to Mr. D. Harris, this court finds that the totality of the circumstances does not state a cognizable claim for excessive force.  Indeed, the Tenth Circuit has admonished lower courts to "avoid unrealistic second-guessing" of police officers' decisions in this regard, and thus requires them to use not the least intrusive means in the course of a detention, but only reasonable ones.  *See United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994).  Thus, Claim I, insofar as it asserts excessive force claims against any of the Denver Defendants, is properly dismissed only as to Mr. D. Harris and his March 1, 2019 arrest.

***During Transport***.  Mr. M. Harris also alleges that Defendants Foster and Capser used excessive force during his transport to the Denver Downtown Detention Facility.  [#56 at 40 ¶¶ 88-93].  Specifically, Mr. M. Harris alleges that Defendants Foster and Capser abruptly pulled over their squad car and beat Mr. M. Harris with their fists, baton, and a radio, and forcibly removed him from the back seat of their squad car.  [*Id.* at ¶¶ 88, 91]. Mr. M. Harris further avers that Defendant Foster made a makeshift noose and tightened it around his neck, and Defendant

Capser grasped a hold of it and violently pulled it, causing him excruciating pain and a concussion. [*Id.* at ¶ 93].

These allegations must be taken as true for the purposes of the Motion for Partial Dismissal, and indeed, are not addressed in the Motion – despite the Denver Defendants requesting dismissal of the entirety of Claim I. [#31]. The body worn camera videos do not show Mr. M. Harris being transported by Defendants Foster and Capser; and thus, do not clearly and unequivocally refute the allegation that the officers with excessive force while transporting Mr. M. Harris, such that the Court should foreclose the later consideration of evidence obtained from the officers during discovery. *See Choate v. City of Gardner, Kan.*, No. 16-2118-JWL, 2016 WL 2958464, at *4 (D. Kan. May 23, 2016).

***Personal participation.*** It is axiomatic that personal participation is "an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). To establish personal participation, Plaintiffs must plead facts that, taken as true for the purposes of the instant Motion for Partial Dismissal, establishes an affirmative link between the use of excessive force and each defendant's participation, control or direction, or failure to supervise. *Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993).

The Denver Defendants argue that Officers Reiner, Capser, and Novotny did not personally participate in any alleged use of force against Mr. M. Harris, and therefore, must be granted qualified immunity based on lack of personal participation. [#31 at 11].[6] The Court agrees that there are not sufficient allegations regarding Officers Reiner and Notovny (or any unnamed

---

[6] In addition, the Denver Defendants make a similar argument that Officers Foster, Jenkins, Capser, Novotny, and Reiner are entitled to qualified immunity for the March 1, 2019 arrest of Mr. D. Harris for lack of personal participation. Due to this conclusion that Mr. D. Harris does not state a viable cause of action for excessive force, the Court need not reach this argument.

defendant who allegedly "arrived at the scene and joined in on this one-sided attack" [#56 at ¶ 95)], with regard to any use of excessive force against Mr. M. Harris.  Indeed, there are no particularized allegations with respect Defendants Reiner or Notovny regarding Mr. M. Harris's arrest and the subsequent use of force or warrantless searches.  However, at this juncture, Mr. M. Harris has clearly pleaded Defendant Capser's involvement in the arrest, search, and alleged use of force both at the time of the arrest and during his transport.[7]  Thus, she is not properly dismissed at this juncture for lack of personal participation in the events of November 6, 2018.  In addition, in construing the Amended Complaint liberally, Mr. M. Harris also alleges that Defendants Avendano, Martinez, and Romero each conducted warrantless searches.  [#56 at ¶ 56].  Thus, dismissal of these additional Defendants based on lack of personal participation is neither argued nor appropriate at this time.

### C.      Individual Liability – Failure to Intervene[8]

"To establish a constitutional violation under a 'failure to intervene' theory," a plaintiff must show: "(i) the defendant officer was present at the scene; (ii) the defendant officer witnessed another officer applying force; (iii) the application of force was such that any reasonable officer would recognize that the force being used was excessive under the circumstances; and (iv) the defendant officer had a reasonable opportunity to intercede to prevent the further application of excessive force, but failed to do so." *Martinez v. City & Cty. of Denver*, No. 11-cv-00102-MSK-KLM, 2013 WL 5366980, at *5 (D. Colo. Sept. 25, 2013) (citing *Mick v. Brewer*, 76 F.3d 1127,

---

[7] Defendant Ramirez makes no separate argument regarding his personal participation.  [#67]. Thus, this Court does not reach the question of whether Defendant Martinez's actions are sufficient to plead personal participation.

[8] By its very definition, the failure to intervene theory does not apply to any causes of action encompassed by Claim I that alleges illegal search and seizure in violation of the Fourth Amendment beyond excessive force.

1136 (10th Cir. 1996)).  In order for liability to attach, the officer must have had a sufficient opportunity to intercede.  *See Est. of Strong v. City of Northglenn, Colo.*, No. 17-CV-1276-WJM-MEH, 2018 WL 1640251, at *4 (D. Colo. Apr. 5, 2018) (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008)).

The Denver Defendants contend that Plaintiffs have not pleaded sufficient facts to avoid dismissal of their claims for failure to intervene because the level of force was appropriate. [#31 at 11].  This is true for the excessive force claim asserted by Mr. D. Harris, but having found that Mr. M. Harris's excessive force claim is not subject to dismissal at this juncture, this argument does not apply.  Nevertheless, Court finds that any claim for failure to intervene by Mr. M. Harris as to Defendants Reiner and Novotny is subject to dismissal pursuant to 28 U.S.C. § 1915(e) for failing to state a claim on which relief may be granted, even without a finding that the level of force was appropriate with respect to the November 6, 2018 arrest of Mr. M. Harris.  Like other allegations, a constitutional violation based on failure to intervene must be supported by well-pleaded facts; conclusory statements are insufficient to withstand dismissal.  *See Est. of Strong*, 2018 WL 1640251, at *4.  There are no factual allegations that either Defendant Reiner or Defendant Novotny participated in the arrest of Mr. M. Harris.  *See generally* [#56].  This Court notes that it must take, as true, Mr. M. Harris's allegations that Defendants Avendano, Capser, Martinez and Romero pinned him to the squad car and allowed Defendant Foster to use excessive force on him.  [#56 at ¶ 56].

*Summary.*  Ultimately, evaluation of the videos in this case as to the conduct by Defendants Foster, Capser, Ramirez, Avendano, and Martinez toward Mr. M. Harris, and whether such conduct constituted excessive force, may be aided by testimony and possibly other forms of evidence that can be considered at summary judgment or at trial.  *Est. of Holmes by & through*

*Couser v. Somers*, 387 F. Supp. 3d 1233, 1244 (D. Kan. 2019), *aff'd sub nom. Couser v. Gay*, 959 F.3d 1018 (10th Cir. 2020). "Rule 12(b)(6) motions to dismiss are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." *Tal v. Hogan*, 453 F.3d 1244, 1266 (10th Cir. 2006). Thus, the Court concludes that dismissal of Claim I as to Mr. M. Harris against Defendants Ramirez, Foster, Capser, Avendano, and Martinez for excessive force and/or failure to intervene is not appropriate at this juncture.[9]   In addition, the Court concludes that dismissal as to Claim I for illegal search and seizure (for stop and arrest) arising from either the November 6, 2018 incident involving Mr. M. Harris against Defendants Foster, Capser, Ramirez, Martinez, and Avendano; or the March 1, 2019 incident involving Mr. D. Harris against Defendants Foster, Jenkins, Capser, Novotny, and Reiner, is neither sought nor summarily appropriate. All other claims premised on individual liability raised by Claim I are **DISMISSED**.

### D.   Municipal Liability

A municipality may not be liable if one of its officers has not committed an "underlying constitutional violation, *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citations omitted),   and cannot be liable for the constitutional violations of its employees through a *respondeat superior* theory. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).

***Policy or Custom***.   To establish a municipality's liability for its employees' § 1983 violations, a plaintiff must demonstrate that the violation was "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

---

[9] The Motion for Partial Dismissal does not address Mr. M. Harris's allegations of illegal search and seizure that have been part of the case since the filing of original Complaint. *Compare* [#56 at 6] *with* [#1 at 7].   Upon review, this Court finds that they are also not properly subject to summary dismissal pursuant to 28 U.S.C. § 1915(e).

official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Thus, in order to avoid dismissal pursuant to Rule 12(b)(6), a plaintiff must allege sufficient facts, taken as true, that establish (1) a municipal employee committed a constitutional violation; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Nor can a plaintiff rely upon conclusory allegations; rather, factual allegations must be set forth to build up to "the existence of a *Monell* policy as a conclusion, rather than a fact to be baldly asserted." *Sanchez v. City of Littleton*, No. 19-CV-01871-PAB-MEH, 2020 WL 5815913, at *12 (D. Colo. Sept. 30, 2020).

*Failure to Train.* To state a *Monell* claim based on the failure to train or supervise, "a plaintiff must sufficiently allege that the failure 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.' *Erickson v. City of Lakewood, Colo.*, No. 19-CV-02613-PAB-NYW, 2020 WL 5702278, at *9 (D. Colo. Sept. 24, 2020). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011). The distinction between the two theories is potentially significant because a failure to train theory requires proof of deliberate indifference, whereas a policy/custom theory does not. *See Trujillo v. City & Cty. of Denver*, No. 16-CV-1747-WJM-MJW, 2017 WL 1364691, at *4 (D. Colo. Apr. 14, 2017).

The following non-exhaustive list of allegations informs this Court's analysis of the municipal liability claim against the City:

> The Defendant City and Defendant Pazen have attempted to publicly minimize and cover up the egregious record of excessive force by Denver Police by repeatedly informing City officials and the public that the Denver Police use of force per arrest is less than most major police forces, whereas in fact Denver's police rank among the nations worst major city police departments in this category.

> Denver has recently been ranked worst in one report for the first half of 2019 out of the 63 largest law enforcement agencies "for credible excessive force reports with an estimated Excessive Force Rate of 2,206 officers involved in excessive force complaints per every 100,000 officers."

> . . .

> It is the longstanding widespread custom, habit, practice and/or policy of the Defendant City, Defendant Pazen and the Denver Police Department to find no fault with police conduct as long as any story is given by police, regardless of how incredible.

> . . .

> Defendant Foster has been publicly accused of brutalizing other citizens, but allowed to remain on the street as a police officer without significant discipline.

> Without limitation, he was reported by the Denver Post to have beat a Pueblo County Sheriff Deputy's son without provocation.

> The media reports that the victim was initially charged with "resistance," but that the charges there were also subsequently dropped, while the entity and police chief failed to take any meaningful action to seriously investigate or discipline the involved officers. This is the same pattern of events complained of here.

> On information and belief, Defendant Foster and Romero was subsequently only minimally disciplined once it was revealed by video footage that he had misreported events related to this beating to cover up his own wrongdoing and that of other officer's in the improper use of force against the public.

> Defendant Foster on information and belief was fired by Castle Rock Police Department after citizens reported he stopped and beat them because they are Black and Mexican, but was later hired on by Denver Police as a pattern of Defendant City and Pazen hiring and rehiring rouge peace officers that have been fired by

other Police Departments throughout the nation illegal use of excessive force or lying in official police reports.

On information and belief, even after this fraudulent reporting Foster was discovered, he under-disciplined by the former Manager of Safety pursuant to herein challenged policies, habits, practices and customs.

. . .

On information and belief, Defendant Romero as a 22 year veteran narcotics officer may have a history of citizen complaints and/or discipline.

On information and belief, **Defendants Capser, City, Davidson, Dixion, Doe, Foster, Jenkins and Kushdilian, Novoty, Martinez, McCann and Pazen and Perez** may also have a history of citizen complaints and/or discipline

[#56 at ¶¶ 200-201, 219-24, 226-27 (emphasis in original)].

An examination of these allegations leads to the conclusion that Plaintiffs' Amended Complaint does not contain sufficient factual allegations to state a cognizable claim for municipal liability, under either a theory of policy/custom or failure to train.  With respect to a policy or custom, Plaintiffs' allegations are conclusory and cannot support a claim for municipal liability. *See Fymbo v. City & Cty. of Denver, Colo.*, No. 14-CV-00841-PAB-BNB, 2014 WL 7188932, at *1 (D. Colo. Dec. 17, 2014), *aff'd sub nom. Fymbo v. City & Cty. of Denver, Colo*., 631 F. App'x 583 (10th Cir. 2015).  For liability to attach under a failure to train theory, a plaintiff must be able to prove the deficiency in a city's training program is closely related to the ultimate injury.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989).  Plaintiffs' generalized statements regarding the deficiencies in the policing of the Denver Police Department are insufficient; "mere conclusory allegations that an officer or group of officers are unsatisfactorily trained will not suffice to fasten liability on the city." *Bark v. Chacon,* No. 10-CV-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011).  Accordingly, this Court **DISMISSES** Claim I insofar as it is asserted against the City.

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1)   Plaintiffs' Joint Motion to Amend Complaint [#49] is **GRANTED**;

(2)   The Clerk of the Court is **DIRECTED to ACCEPT** and **IDENTIFY** the proposed Amended Complaint [#56] as the Amended Complaint;

(3)   Denver Defendants' Motion to Dismiss, In Part, Plaintiffs' Complaint Pursuant To Fed.R.Civ.P. 12(B)(6) [Doc. #1] [#31] is **GRANTED IN PART and DENIED IN PART**;

(4)   Claim I by Plaintiff Marquise Harris against Defendants Ramirez, Foster, Capser, Avendano, and Martinez on the theories of excessive force and/or failure to intervene **REMAINS**;

(5)   In addition, Claim I by Plaintiff Marquise Harris against Defendants Ramirez, Foster, Capser, Martinez, and Avendano for illegal search and seizure (stop and arrest) arising from the November 6, 2018 incident involving Mr. M. Harris **REMAINS**;

(6)   Claim I by Plaintiff Dedrick Harris against Defendants Jenkins, Foster, Capser, Novotny, and Reiner for illegal search and seizure (stop and arrest) arising from the March 1, 2019 incident **REMAINS**; and

(7)     All other causes of action premised on individual liability or municipal liability

raised by Claim I are **DISMISSED without prejudice.**

DATED this 29th day of March, 2021.

BY THE COURT:

_____

RAYMOND P. MOORE
United States District Judge